IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 99-cv-02431-ZLW-CBS

MARKEITH BOYD,
         Plaintiff,
v.

STEPHEN J. T'KACH, Associate Director, Office of Enforcement Operations,
TRACEY HENDRICKS, CIMS Coordinator, U.S. Bureau of Prisons,
         Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

         This civil action comes before the court on Defendants' "Motion to Dismiss" (filed

July 25, 2007) (doc. # 178).  Pursuant to the Order of Reference dated November 22,

2006 (doc. # 143) and the memorandum dated July 25, 2007 (doc. # 179), the Motion

was referred to the Magistrate Judge.  The court has reviewed the Motion, Mr. Boyd's

"Motion in Opposition of Dismissal" ("Response") (filed September 17, 2007) (doc. #

185), the "Declaration of Markeith Boyd" (filed September 17, 2007) (doc. # 184), the

entire case file, and the applicable law and is sufficiently advised in the premises.


I.       Statement of the Case

         In 1992, Mr. Boyd was a state prisoner in New York.  Following an attempt on his

life on or about September 7, 1992, Mr. Boyd was transferred to federal custody

pursuant to the Witness Relocation and Protection Act ("the Program"), 18 U.S.C. §

1

3521.  In November 1999, Mr. Boyd was removed from the Program based on disruptive behavior and violations of Program guidelines and Bureau of Prison rules. Mr. Boyd's administrative appeal of his removal was denied.  When Mr. Boyd initiated this lawsuit on December 20, 1999, he was incarcerated at the Federal Correctional Institution at Englewood, Colorado.  Upon his transfer from the Program, Mr. Boyd was returned to state custody.  Mr. Boyd is currently incarcerated in the State of New York.

Mr. Boyd initially filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody, seeking an order to place him back in the Program.  (*See* doc. # 2).  On September 7, 2001, District Judge Sparr dismissed two of Mr. Boyd's claims for lack of subject matter jurisdiction.  (*See* "Order on Recommendation" (doc. # 68)).  District Judge Sparr further determined that Mr. Boyd's remaining claims were not properly pled as a § 2241 habeas action and directed Mr. Boyd to file an amended civil rights complaint under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and to provide the necessary details for his claims.  (*See* doc. # 68).

On or about June 11, 2002, Mr. Boyd tendered an amended complaint.  On June 12, 2002, District Judge Sparr again ordered Mr. Boyd to file an amended complaint. (*See* "Order Directing Plaintiff to File Amended Complaint" (doc. # 86) at p. 3 ("Mr. Boyd will be ordered to file an Amended Complaint that states an affirmative link between the alleged constitutional violation and each named Defendant's participation, control or direction, or failure to supervise")).  Mr. Boyd filed his Amended Complaint on July 29, 2002.  (*See* doc. # 92).

2

On November 26, 2002, District Judge Sparr ordered that this civil action would proceed only on Claims One and Two of Mr. Boyd's Amended Complaint.  (*See* "Order to Dismiss in Part and to Direct Defendants to Respond in Part" (doc. # 105)).  District Judge Sparr dismissed Defendant John Ashcroft and ordered only Defendants T'Kach, Reno, Hendricks, and Llewellyn to respond to the Amended Complaint.  (*See id.* at pp. 4-5).

Other than regular partial filing fee payments made by Mr. Boyd, there was almost no activity in the case for four years.  (*See* docs. # 106 through # 141).  Upon District Judge Sparr's death, this civil action was reassigned to District Judge Weinshienk on November 17, 2006.  On March 1, 2007, District Judge Weinshienk dismissed Claim Two and Defendant Lewellyn from this action.  (*See* Order (doc. # 169)).  On April 19, 2007, District Judge Weinshienk dismissed Defendant Reno from this action.  (*See* "Order Dismissing Certain Defendant" (doc. # 169)).  Thus, a single claim remains in this action against the two remaining Defendants: Claim One that Defendants T'Kach and Hendricks terminated Mr. Boyd from the Program in retaliation "for exercising his right to seek redress of his grievances, . . . and conspired to have [him] removed from [the Program]."  (*See* Amended Complaint (doc. # 92) at pp. 3, 4; *see also* incorporated Amended Complaint (doc. # 88) at pp. 3, 3a).  Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the single remaining claim on several grounds.

II.    Standard of Review

3

The court is empowered to dismiss an action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). The court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado*, 493 F. 3d at 1215 n. 2 (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1968-69 (2007) ("the old standard, 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' is 'best forgotten as an incomplete, negative gloss on an accepted pleading standard'")).[1]

Because Mr. Boyd appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1]   The court notes that its Recommendation in this case would be the same regardless of whether it applied "the old 'no set of facts' standard, *see, e.g., David*, 101 F.3d at 1352, or . . . either a plausibility standard or a requirement that the complaint include factual allegations sufficient to 'raise a right to relief above the speculative level.'" *See Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d at 1215 n. 2. (citing *Bell Atlantic Corp.*, 127 S. Ct. at 1965).

III.   Analysis

Mr. Boyd brings Claim One pursuant to *Bivens*, 403 U.S. at 388.  In *Bivens*, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001).  *See also Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity . . .").  "To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citing *Bivens,* 403 U.S. at 388).  Mr. Boyd alleges that Defendants T'Kach and Hendricks terminated him from the Program in retaliation "for exercising his right to seek redress of his grievances, and for complaining about improper, illegal, and unprofessional conduct about staff's wrongdoing, as well as prisoner's illegal activities" and "conspired to have [him] removed from [the Program]." (*See* Amended Complaint (doc. # 92) at p. 3).

A.   Retaliation

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (quotation omitted).  "[P]risoners have the constitutional right to petition the Government for redress of their grievances." *Hudson v. Palmer*, 468

5

U.S. 517, 523 (1984).  Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief under 42 U.S.C. § 1997e, then punishing him for actually filing grievances would state a claim for a First Amendment violation.  *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("It is also one aspect of the First Amendment right to petition the government for redress of grievances.") (citations omitted); *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) ("[T]he jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established.").

In order to state a valid claim of retaliation under *Bivens*, a plaintiff must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and "prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place."  *Smith v. Maschner*, 899 F.2d at 949-50 (internal quotation marks omitted).  "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier*, 922 F.2d at 562 n. 1.  *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("Mere conclusionary [sic] allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim") (citation omitted).  "The inmate must allege more than his personal belief that he is the victim of retaliation."  *Jones*, 188 F.3d at 325.  The prisoner must "allege a chronology of events from which retaliation may plausibly be inferred."  *Jones*, 188 F.3d at 325 (citation omitted).  *See also Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) ("ultimate

question is whether events would have transpired differently absent the retaliatory motive") (citation omitted).

### 1.   Judicial Review of the Program

Defendants make a threshold argument that Mr. Boyd's claim fails because whether a witness will be protected under the Program is entirely within the Attorney General's discretion and is not subject to judicial review. *See Boyd v. T'Kach*, 26 Fed. Appx. 792, * 2 (10th Cir. Nov. 15, 2001), *cert. denied*, 535 U.S. 1105 (2002) (doc. # 78). However, prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). *See also Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another") (citation omitted); *Smith v. Maschner*, 899 F.2d at 947 ("[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.") (internal quotation marks and citations omitted). While Mr. Boyd has no constitutional right to remain in the Program and the court lacks jurisdiction to review the decision to remove Mr. Boyd from the Program, Mr. Boyd's First Amendment retaliation claim is not foreclosed. *See* Recommendation and Order

7

of United States Magistrate Judge Bruce D. Pringle (doc. # 13) at p. 4) (citing *Garcia v. United States*, 666 F.2d 960, 962-65 (5th Cir. 1982)).[2]


   2.      Failure to State a Claim for Retaliation

   The court concludes that Mr. Boyd has not alleged adequate facts to state a

cognizable *Bivens* claim for unconstitutional retaliation.  Mr. Boyd has not alleged that

Defendant Hendricks had any knowledge of his complaints.  Nor has Mr. Boyd alleged

any retaliatory motive by Defendant Hendricks.  While Mr. Boyd alleges that Defendant

---

   [2]   To the extent that Mr. Boyd attempts to challenge the grounds for the decision to remove him from the Program, *see, e.g.,* Mr. Boyd's Response (doc. # 185 at pp. 8-9, 25-33 of 33), a decision to terminate protection is not subject to judicial review.  *See* 18 U.S.C. § 3521(f) (decisions to terminate protections under the Program "shall not be subject to judicial review");  *Boyd v. T'Kach*, 26 Fed. Appx. at 792 ("Because the district court lacks jurisdiction to review the decision to remove Boyd from the Program, and lacks authority to require his placement in the Program, it is clear that it lacked any jurisdiction or authority to grant Boyd's Motion for injunctive relief seeking either his continuation in, or his return to, the Program.");  *United States v. Gigante*, 187 F.3d 261 (2d Cir. 1999) (dismissing plaintiff's request to return to the Program as district court was without jurisdiction to consider it);  18 U.S.C. § 3521(a)(3) ("The United States and its officers and employees shall not be subject to any civil liability on account of any decision to provide or not to provide protection under this chapter.");  *Garcia v. United States*, 666 F.2d at 962-64 (plaintiff's discharge from the Program did not give rise to any constitutional claims).
   To the extent that Mr. Boyd may be alleging a violation of due process (*see* Amended Complaint (doc. # 92) at p. 3 ("and in so doing denied me due process")), such a claim would also be foreclosed.  As Mr. Boyd had no protected liberty or property interest in placement in the Program, he was not due any process in removal from the Program.  *See Garcia v. United States*, 666 F.2d at 962-64 (no statutory or contractual entitlement to continued participation in the Program).
   The court also lacks jurisdiction to review Mr. Boyd's request for injunctive relief related to his removal from the Program and requested reinstatement in the Program. (*See* Amended Complaint (doc. # 92) at p. 8 (requesting "corrective action by requiring a due process/disciplinary hearing prior to termination and placement in another state/jurisdiction . . .").

T'Kach "personally threatened plaintiff with adverse action if plaintiff had continue [sic] to complaint about such activities" (*see* superseded Complaint (doc. # 88) at p. 3a), Mr. Boyd has not alleged the dates that he "complain[ed] about improper, illegal, and unprofessional conduct about staff's wrongdoing, as well as prisoner's illegal activities" or the date that he was removed from the Program. (*See* Amended Complaint (doc. # 92) at p. 3). Thus, Mr. Boyd has not alleged any temporal relationship between his alleged complaints and his removal from the program. Mr. Boyd has not set forth any "chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325 (citation omitted). Thus, Mr. Boyd fails to adequately allege any link between his protected First Amendment activity and the removal that he alleges was retaliatory. As Mr. Boyd has failed to adequately allege that his grievances were the "but for" cause of his removal from the Program, Mr. Boyd fails to state a claim for retaliation based on the exercise of a constitutional right. *See Peterson*, 149 F.3d at 1144 ("An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.") (internal quotation marks and citation omitted). *See also Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed") (citations omitted).

B.    Conspiracy

Mr. Boyd further alleges conspiracy by Defendants T'Kach and Hendricks under *Bivens*. "A claim of conspiracy requires plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citation omitted). "[C]onspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds." *Merritt*, 153 F. Supp. 2d at 1225 (citation omitted). "However, conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient." *Merritt*, 153 F. Supp. 2d at 1225 (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)).

Mr. Boyd's only allegation of conspiracy by Defendants T'Kach and Hendricks is that "the abovelisted/mentioned defendants conspired to have me removed from [the Program]. . . ." (*See* Amended Complaint (doc. # 92) at p. 3).  Mr. Boyd has failed to allege facts sufficient to suggest the existence of any of the elements of a conspiracy. *See, e.g.*, *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) (civil conspiracy defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another; and an overt act that results in damage") (internal quotation marks and citation omitted).  Mr. Boyd has not alleged any specific communication, cooperation or command from which a conspiracy between the Defendants could be inferred.  Mr. Boyd's single conclusory allegation is not sufficient to state a claim of conspiracy under

10

*Bivens*.

C.    Exhaustion of Administrative Remedies

Defendants further move to dismiss Claim One based upon Mr. Boyd's failure to

exhaust his administrative remedies, as required by the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(a).  Prior to filing this civil action, Mr. Boyd was required

to exhaust administrative remedies pursuant to the PLRA.  *Booth v. Churner*, 532 U.S.

731, 741 (2001).  Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner confined
> in any jail, prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

Prior to January 22, 2007, the Tenth Circuit interpreted the PLRA as imposing "a

pleading requirement."  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th

Cir. 2003), *cert. denied*, 543 U.S. 925 (2004), *abrogated by* 127 S.Ct. 910 (2007).  "A

complaint that fails to allege the requisite exhaustion of remedies [was] tantamount to

one that fails to state a claim upon which relief may be granted."  *Steele*, 355 F.3d at

1210.  "In the absence of particularized averments concerning exhaustion showing the

nature of the administrative proceeding and its outcome, the action must be dismissed

under § 1997e."  *Steele*, 355 F.3d at 1211 (internal quotation marks and citation

omitted).

"The Supreme Court recently rejected our rule in *Steele*, however, and set forth

11

a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense

under the PLRA, and . . . inmates are not required to specially plead or demonstrate

exhaustion in their complaints.' " *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir.

2007) (quoting *Jones v. Bock*, --- U.S. ----, ----, 127 S.Ct. 910, 921, 166  (Jan. 22, 2007)

and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  Now "the

burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d at 1241.

   After *Jones*, 127 S. Ct. at 910, dismissal under § 1997e(a) for failure to exhaust

administrative remedies cannot usually be made on pleadings without proof.  *See*

*Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a

district court be able to conclude from the face of the complaint that a prisoner has not

exhausted his administrative remedies and that he is without a valid excuse'") (quoting

*Aquilar-Avellaveda v. Terrell*, 478 F.3d at 1225).  At this stage of the litigation,

Defendants have not met their burden of demonstrating that Mr. Boyd has not

exhausted his administrative remedies.  Defendants' request for dismissal of Claim One

based on failure to exhaust administrative remedies is properly denied at this time.


D.   Physical Injury

   Defendants also move to dismiss Mr. Boyd's request for compensatory damages

on the basis that he failed to comply with the PLRA, 42 U.S.C. § 1997e(e), which bars a

prisoner from bringing a civil action "for mental or emotional injury suffered while in

custody without a prior showing of physical injury."  *See* 42 U.S.C. § 1997e(a) and (e);

*Turner v. Schultz*, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) ("[A]lthough claims for

mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e)

provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury

in addition to mental or emotional harms.'") (quoting *Perkins v. Kansas Department of

Corrections*, 165 F.3d  803, 807 (10th Cir. 1999)).

      The physical injury requirement applies only to any mental or emotional injury

claim.  Mr. Boyd's allegations suggest physical harm caused to him by the alleged

constitutional violation.  (*See* incorporated Amended Complaint (doc. # 88) at p. 3a)

("Plaintiff's termination from the 'Program' has cause him to be physically injured,

suffering from broken and fractured bones, surgery, mental, emotional and

psychological damages . . .").  Thus, Defendants' request for dismissal of Claim One

based on failure to allege physical injury is properly denied.


E.     Qualified Immunity

      Defendants raise the defense of qualified immunity.  "If a federal prisoner in a

BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against

the offending individual officer, subject to the defense of qualified immunity."

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001).  Whether Defendants

are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810,

813 (10th Cir.  2007).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff
> bears a heavy two-part burden. Initially, the plaintiff must show the
> [defendant]'s conduct violated a constitutional right: A court required to

> rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right? If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.

*Wilder*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation") (citation omitted); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Boyd has failed to state a claim for a violation of the First Amendment, the court need proceed no further on the qualified immunity issue. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003) (court "need not reach the question of whether the individual defendants are entitled to qualified immunity if [it] determine[s]. . . , that plaintiffs failed to sufficiently allege the violation of a constitutional right").

14

F.      Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Defendants further argue that they are not subject to personal jurisdiction in the

District of Colorado.  "Colorado's long arm statute is coextensive with constitutional

limitations imposed by the due process clause. Therefore, if jurisdiction is consistent

with the due process clause, Colorado's long arm statute authorizes jurisdiction over a

nonresident defendant." *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir.

2004) (citation omitted), *cert. denied*, 544 U.S. 974 (2005).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established

constitutional analysis for personal jurisdiction."  *Benton*, 375 F. 3d at 1075.

> The Due Process Clause protects an individual's liberty interest in
> not being subject to the binding judgments of a forum with which he has
> established no meaningful contacts ties, or relations. Therefore, a court
> may exercise personal jurisdiction over a nonresident defendant only so
> long as there exist minimum contacts between the defendant and the
> forum state. The requirement that minimum contacts be present protects a
> defendant, who has no meaningful contact with a state, from the burdens
> of defending a lawsuit far from home in a forum where the substantive and
> procedural laws may be quite different from those with which the litigant is
> familiar.
>        The minimum contacts standard may be met in two ways. First, a
> court may, consistent with due process, assert specific jurisdiction over a
> nonresident defendant if the defendant has purposefully directed his
> activities at residents of the forum, and the litigation results from alleged
> injuries that arise out of or relate to those activities. Where a court's
> exercise of jurisdiction does not directly arise from a defendant's
> forum-related activities, the court may nonetheless maintain general
> personal jurisdiction over the defendant based on the defendant's general
> business contacts with the forum state.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th

Cir.1998) (internal quotation marks and citations omitted).

The court is also required to "consider whether the exercise of personal

jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings,* 149 F.3d at 1091 (internal quotation marks and citation omitted). Thus, the court must determine whether the "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *OMI Holdings,* 149 F.3d at 1091 (internal quotation marks and citation omitted).

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," and "if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor." *Id.*

1.     Minimum Contacts with the District of Colorado

Defendants argue that they do not have minimum contacts with the District of Colorado. "In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted). The "question of [w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each

16

case." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted).  "A

defendant's contacts are sufficient if the defendant purposefully directed its activities at

residents of the forum, and . . . the plaintiff's claim arises out of or results from actions

by the defendant himself that create a substantial connection with the forum state."

*Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted).  The court

"must consider whether the defendant's conduct and connection with the forum State

are such that he should reasonably anticipate being haled into court there."

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

Mr. Boyd's allegations do not suffice to make a prima facie showing of the

requisite minimum contacts.  Mr. Boyd has alleged that Defendants T'Kach and

Hendricks were employed in Washington, D.C. at the time relevant to the events in this

case.  (*See* Amended Complaint (doc. # 92) at pp. 2-3).  Mr. Boyd has not alleged that

Defendant T'Kach or Hendricks had any contact with the State of Colorado.  (*See*

Amended Complaint (doc. # 92)).  Mr. Boyd argues that Defendants' contact with

Colorado "was via their positions within the Federal BOP and it[s] connection with the

U.S. Marshal's Witness Program, where petitioner was a participant," that "Defendant

T'Kach was given correspondence from plaintiff . . . ," and that Mr. Boyd received a

"communication . . . from defendants' co-workers/office."  (*See* Mr. Boyd's Response

(doc. # 185) at pp. 5, 6; Mr. Boyd's Exhibit B (doc. # 185) at p. 23 of 33).  "These

alleged contacts are very different from those approved by the Supreme Court or this

Circuit to support the exercise of specific personal jurisdiction."  *Trujillo v. Williams*, 465

F.3d 1210, 1219 (10th Cir. 2006) (citations omitted).  "[I]t is essential in each case that

there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo*, 465 F.3d at 1219 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citation omitted) (emphasis in original). "The constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum." *Burger King*, 471 U.S. at 474 (internal quotation marks and citation omitted).

2.      Fair Play and Substantial Justice

Mr. Boyd has not adequately alleged that Defendants has sufficient contacts with Colorado to permit this court to exercise personal jurisdiction over them.  Thus, the court need not consider whether assertion of personal jurisdiction would comport with fair play and substantial justice.  As the court cannot proceed to the merits of a claim in the absence of personal jurisdiction over the individual parties sued, this civil action is properly dismissed.

G.      Failure to Allege Personal Participation

Based on the court's determinations above, that Mr. Boyd has failed to state a claim for a violation of the First Amendment and that the court lacks personal jurisdiction over Defendants, the court need not reach Defendants' additional argument that Mr. Boyd has not alleged personal participation by Defendants T'Kach or Hendricks, as required for a claim under *Bivens*.

18

IV.    Conclusion

Accordingly, IT IS RECOMMENDED that Defendants' "Motion to Dismiss" (filed July 25, 2007) (doc. # 178) be GRANTED and the single remaining claim against the two remaining Defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court

19

or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 28th day of September, 2007.

BY THE COURT:

_s/Craig B. Shaffer_____
United States Magistrate Judge